United States District Court
Southern District of Texas
**ENTERED**
February 27, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **DEBRA DOLLERY, on behalf of herself** | § | |
| **and all others similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Case No. 6:18-CV-00104** |
| | § | |
| **POST ACUTE MEDICAL, LLC, POST** | § | |
| **ACUTE MEDICAL MANAGEMENT,** | § | |
| **LLC, and POST ACUTE MEDICAL** | § | |
| **AT VICTORIA, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Debra Dollery was employed as a nurse at the Post Acute Specialty Hospital of Victoria from August 2013 to May 2018. She alleges that her employer engaged in certain practices that violated the Fair Labor Standards Act ("FLSA"), and she has filed this Civil Action on behalf of herself and others similarly situated against Defendants Post Acute Medical LLC, Post Acute Medical Management LLC, and Post Acute Medical at Victoria, LLC. Dollery generally alleges that Defendants failed to properly compensate certain non-exempt hourly employees. On July 27, 2020, this Court granted the Parties' Joint Stipulation for the conditional certification of a collective action.

Pending before the Court is Defendants' Motion to Decertify Plaintiffs' Conditionally Certified FLSA Collective Action, (Dkt. No. 189). For the following reasons, the Court **DENIES** the Motion.

## I.    BACKGROUND

Defendants own and operate a network of hospitals across the United States that provide long-term acute care and inpatient rehabilitation services.  (Dkt. No. 189 at 8).  Dollery was employed as a nurse at the Post Acute Specialty Hospital of Victoria from August 2013 to May 2018.  (Dkt. No. 1 at 3).  In that position, Dollery's primary responsibilities included "providing patient care and monitoring, administering medicine to patients, interacting with other hospital employees and visitors, monitoring blood-work and patient test results, and responding to emergency situations."  (*Id.* at 6).

On December 18, 2018, Dollery filed a collective-action lawsuit on behalf of herself and all other similarly situated individuals who worked for the Defendants as nurses, nurse aides, nurse assistants, and other non-exempt hourly employees (the "nursing staff").  (*Id.* at 1).  Dollery contends that the nursing staff are similarly situated for purposes of this lawsuit because they (1) report to the same hospital or clinical facility that is owned and operated by Defendants, (2) perform similar jobs, (3) are subject to the same work, time, pay, meal and rest break, and overtime policies, (4) are paid hourly, and (5) work similar hours.  (*Id.* at 7–8).

Dollery raises three separate FLSA violations. First, she alleges that Defendants automatically deduct 30 minutes from the nursing staff employees' hours worked for meal breaks regardless of whether such employees received a full, uninterrupted break.

(*Id.* at 5–6).[1] Second, Dollery alleges that Defendants required nursing staff employees to perform off-the-clock work without compensation. (*Id.* at 6). And third, Dollery alleges that Defendants failed to pay the nursing staff employees overtime wages when the inclusion of the 30-minute meal break and off-the-clock work would have resulted in more than 40 hours worked in a week. (*Id.* at 7–8).

On July 27, 2020, this Court granted the Parties' Joint Stipulation for Conditional Certification and Notice. (Dkt. No. 99). This Court noted that the collective members were defined by the Parties as: "All non-exempt registered nurses, licensed practical nurses, licensed vocational nurses, certified nursing assistants, and nursing aides employed by Defendants and paid on an hourly rate basis at any time from March 16, 2017 to the Present." (*Id.* at 1) (emphasis removed). The Parties agreed to complete discovery by June 20, 2022, (Dkt. No. 142 at 1), with any motion for decertification to be filed within 90 days from the close of discovery, (*id.*). On September 15, 2022, Defendants filed their Motion to Decertify Plaintiffs' Conditionally Certified FLSA Collective Action. (Dkt. No. 189). The sole issue before this Court is whether to decertify Plaintiffs' conditionally certified FLSA collective action.

## II.   APPLICABLE LAW

Section 216(b) of the FLSA provides that a plaintiff may maintain an action on "behalf of himself . . . and other employees similarly situated" to recover "unpaid

---

[1]     Defendants do not dispute that, prior to October 2019, such a policy existed. (Dkt. No. 189 at 10). However, beginning in October 2019, the hospital policy requires nurses to manually punch in and punch out for their meal breaks. (*Id.*).

minimum wages" or "unpaid overtime compensation[.]"   29 U.S.C. § 216(b).   Until recently, the Fifth Circuit had not announced a legal standard for collective-action certification.  *Swales v. KLLM Transp. Servs. L.L.C.*, 985 F.3d 430 (5th Cir. 2021).  Prior to this new rule, most district courts in the Fifth Circuit employed a two-step certification process announced in *Lusardi v. Xerox Corp*.[2]  *Swales*, 985 F.3d at 436.

Step one, which is referred to as the "conditional certification" of a putative class, involves an initial determination that the proposed members of a collective are similar enough to receive notice of the pending action.  *Id*.  The district court considers whether, based on the pleadings and affidavits of the parties, the putative collective members are similarly situated and may proceed collectively.  *Id*. at 436–37; *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019).  Step two occurs at the conclusion of discovery, often prompted by a motion to decertify.  *Swales*, 985 F.3d. at 437; *Reyna v. Int'l Bank of Com.*, 839 F.3d 373, 374–75 (5th Cir. 2016).  The district court then makes "a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action."  *Reyna*, 839 F.3d at 375 n.2 (internal quotation marks).  If the court finds that the opt-ins are not sufficiently similar to the named plaintiffs, it "must dismiss the opt-in employees, leaving only the named plaintiff's original claims."  *Swales*, 985 F.3d at 437 (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008) (internal quotation marks omitted)).

---

[2]   118 F.R.D. 351 (D.N.J. 1987).

In *Swales*, the Fifth Circuit rejected the *Lusardi* two-step approach, and instead advised district courts to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." *Swales*, 985 F.3d at 440–41. The Fifth Circuit further noted that when deciding if the named plaintiff has met its burden of establishing similarity, a "district court has broad, litigation-management discretion." *Id.* at 443.

While the Fifth Circuit provided guidance to district courts on how to handle FLSA cases at the outset (*i.e.*, pre-notice), it was less specific about how to manage cases that were conditionally certified under *Lusardi* but did not have a decertification motion resolved before *Swales*. In other words, cases that were through step one of *Lusardi*, but not step two. Several district courts within the Fifth Circuit have held that "the case essentially remains the same as it would have been pre-*Swales*" when faced with a collective-action case between step one and step two. *Segovia v. Fuelco Energy LLC*, No. 5:17-CV-01246, 2021 WL 2187956, at *6 (W.D. Tex. May 28, 2021); *Mondeck v. LineQuest, LLC*, No. 7:19-CV-00221, 2021 WL 7184965, at *3 (W.D. Tex. Nov. 5, 2021); *Badon v. Berry's Reliable Res., LLC*, No. 2:19-CV-12317, 2021 WL 933033, at *3 (E.D. La. Mar. 11, 2021). The Parties have also agreed that this approach is appropriate in this case. (Dkt. No. 189 at 12 n.21); (Dkt. No. 193 at 17). "[T]he question the Court must answer now is the same question it would ask at the second stage of the *Lusardi* analysis: are Plaintiffs and Opt-Ins sufficiently 'similarly situated' such that this case should proceed on a collective basis?" *Badon*, 2021 WL 933033, at *3.

## III.   DISCUSSION

When determining whether plaintiffs and opt-ins are similarly situated, courts often consider three factors: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Swales*, 985 F.3d at 437 (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001) (alterations in original) (internal quotation marks omitted)).   "These three factors are not mutually exclusive, and there is considerable overlap among them." *Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567, 574 (E.D. La. 2008).

### A.   DISPARATE FACTUAL AND EMPLOYMENT SETTINGS

Defendants argue that Plaintiffs' claims are "too varied and factually unique" to be considered "similarly situated," (Dkt. No. 189 at 6), because "Plaintiffs worked in different positions, under different supervisors, in different departments within 37 different facilities located in 13 different states."   (*Id.* at 13).   Defendants argue that Plaintiffs have not shown that Defendants knew or should have known that Plaintiffs were working off-the-clock or on their meal breaks, or that Defendants had a consistent practice of violating any policy.   (*Id.*).   Defendants also claim that there are varying accounts of whether Plaintiffs worked off-the-clock, with some Plaintiffs testifying they "never performed such work," others testifying that such work was "rare and without [the] knowledge" of the Defendants, and some testifying that such work was performed frequently.   (*Id.* at 14–15).   Defendants claim that the same is true for meal breaks.   (*Id.* at 15–16).   Defendants offer that the "frequency, duration and cause of break interruptions"

vary widely due to the "differing facilities, departments, shifts, duties, and supervisors." (*Id.* at 15–16).  Defendants argue that there are varying accounts of (1) why Time Card Change Request Forms or Missed Lunch Forms weren't submitted, (2) whether Plaintiffs were required to carry around electronic communication devices, and (3) whether Plaintiffs could have avoided lunch break interruptions.  (*Id.* at 16–18).  Defendants further argue that a jury would be required to analyze each workweek for each Plaintiff because each Plaintiff's experience varies so widely due to their shifts and schedules.[3] (*Id.* at 19–20).

Plaintiffs respond that they are subject to a common policy or practice,[4] and, as such, are similarly situated.  (Dkt. No. 193 at 8).  Plaintiffs argue that the FLSA only requires that Plaintiffs be "similarly situated" not "identically situated," and the differences Defendants identify are immaterial for the purpose of this analysis.  (*Id.* at 19–23).  Plaintiffs claim that the differences raised are not material to the ultimate issue of "whether Plaintiffs are entitled to back wages for their 'off-the-clock' overtime," rather Plaintiffs' claims "turn on factual and legal questions that are common to *all* Plaintiffs

---

[3]    Here, Defendants claim that while some of the Plaintiffs work a standard 40-hour workweek, many Plaintiffs work alternative or "flex" schedules that would need to be analyzed separately.  (Dkt. No. 189 at 20).

[4]    Plaintiffs claim that the common policy or practice that all Plaintiffs were victim to include: (1) Defendants' policy pre-October 2019 to automatically deduct thirty minutes for meal breaks; (2) Defendants' policy to require pre-approval to work overtime; (3) Defendants' policy to discipline employees that violate policies, relevant here, the policy to seek approval for overtime work; (4) Defendants' time correction process that would require employees to self-report violations of the overtime approval policy; and (5) Defendants' performance standards which result in employees working overtime and off-the-clock to meet the demands of their patient care responsibilities.  (Dkt. No. 193 at 20–21).

and can be resolved collectively using common proof and representative testimony." (*Id.* at 20) (emphasis in original).  Further, Plaintiffs offer that any variations in the amount of overtime or off-the-clock compensation owed to each Plaintiff is not a reason to decertify because such differences go to the determination of damages, not liability, and district courts have the authority to bifurcate the question of liability and damages if needed. (*Id.* at 24).

Defendants reply that Plaintiffs have failed to point to any "company-wide policy or practice requiring them to work during their meal breaks, or pre- or post-shifts, without pay," and ethical obligations of medical care providers or subjective beliefs are not enough to establish a company-wide policy. (Dkt. No. 196 at 2).  Defendants further argue that Plaintiffs' claims cannot be bifurcated into liability and damages because whether or not an individual plaintiff worked overtime is also a question of standing. (*Id.* at 5–6).

The first factor courts consider is whether disparate factual and employment settings of the individual plaintiffs favor decertification.  *Snively v. Peak Pressure Control, LLC*, 314 F.Supp.3d 734, 739 (W.D. Tex. 2018).  Courts generally assess the plaintiffs' "job duties, geographic location, supervision, and salary" to determine whether they are similarly situated.  *Id.*  "The presence of a common policy, plan, or practice affecting all putative class members, although not required, can be helpful in assessing the first factor . . . ."  *Vanzzini v. Action Meat Distribs. Inc.*, 995 F.Supp.2d 703, 721 (S.D. Tex. 2014).  However, a collective action is only appropriate if there are common facts and legal issues that make adjudication of the class's claims as a whole feasible; if individual analysis is

required for each plaintiff, a collective action is not appropriate.  *See Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287, 295–96 (S.D. Tex. 2012).

### 1.  Job Duties

Under the job duties factor, the Court looks to whether the Plaintiffs "perform similar duties" by looking to what occurred "on the ground" at the actual facilities. *Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-00605, 2014 WL 5620603, at *3, *5 (S.D. Tex. Nov. 4, 2014).  The "key" is a finding that the "employees performed their jobs pursuant to the employers' prescribed duties or in an otherwise uniform way."  *Id.* at *3.  While Defendants raise concerns about the differences in Plaintiffs' work schedules (*i.e.*, 40-hour workweeks versus alternative schedules), (Dkt. No. 189 at 20), they fail to raise any arguments as to how each Plaintiff's role as a nurse varies.  To the contrary, the evidence reflects that Plaintiffs hold the same job duties and are subject to the same company-wide standards, policies, and procedures.  (Dkt. No. 193 at 9 nn. 5–9).  The Court is unpersuaded that varying work hours is a material difference that justifies decertifying the entire collective.

### 2.  Geographic Location

While Defendants raise concerns about the number of facilities and states across which the Plaintiffs work, they fail to show how such a discrepancy impacts the analysis as to the factual and employment settings.  (Dkt. No. 189 at 11–12).  As indicated above, despite being in different facilities and locations, the Plaintiffs perform direct patient care and are subject to the same company-wide standards, policies, and procedures.  (Dkt. No.

193 at 9 nn. 5–9).   The Court finds that this factor does not weigh in favor of decertification.

      3.    **<u>Supervision</u>**

Defendants also argue that Plaintiffs have disparate factual and employment settings because they work under different supervisors.  (Dkt. No. 189 at 9).  Here, Defendants assert that break scheduling is "commonly determined on a department-by-department or even a supervisor-by-supervisor basis[.]"  (*Id.*).

While this is a notable difference, the Court is unpersuaded that such a difference is enough to warrant decertification.   First, although courts have found that being "supervised by a variety of managers" can be a ground for decertification, *Maynor v. Dow Chemical Co.*, 671 F.Supp.2d 902, 931 (S.D. Tex. 2009) (collecting cases), in those cases working under various supervisors was important because it affected "the amount and type of off-the-clock time required."  *Id.* at 931–32.

Here, Defendants fail to show how differences in the scheduling of breaks impacts Plaintiffs' claim that their breaks were interrupted due to the nature and demands of their jobs.  In the present case, the variations in the amount and type of work performed does not depend on who the individual plaintiff's supervisor was.  Further, Defendants fail to show how a supervisor schedules a break impacts the Defendants' policy of automatically deducting 30 minutes for meal breaks from the nursing staff employees' hours worked.  It appears from the record that despite how supervisors scheduled breaks, 30 minutes were automatically deducted from the nursing staffs' hours worked

regardless of whether they had an uninterrupted break. The Court finds that this factor does not weigh in favor of decertification.

### 4. Common Policy

Although not necessarily required, the presence of a common policy, plan, or practice affecting all class members is helpful to showing a similar factual setting. *Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 534–35 (S.D. Tex. 2008). In this case, it is undisputed that all of the Plaintiffs were subject to the same timekeeping policy. (Dkt. No. 189 at 9); (Dkt. No. 193 at 9). Although Defendants' timekeeping policy did not require Plaintiffs to work through their breaks or off-the-clock, courts have recognized that a lawful policy, in combination with other factors, that lead to a consistent pattern of FLSA violations can support a finding that plaintiffs are similarly situated. *Falcon*, 580 F.Supp.2d at 536.

Plaintiffs allege that a combination of Defendants' policies, specifically (1) the pre-October 2019 automatic deduction for meal breaks, (2) prohibiting overtime work or working through meal breaks without prior approval, and (3) being subject to discipline for violating such policies, led to the FLSA violations. (Dkt. No. 193 at 11). Defendants argue that Plaintiffs have failed to identify any policy which requires Plaintiffs to work through breaks or off-the-clock, and instead direct this Court to the holding in *Roberts v. Baptist Healthcare System, LLC*.[5] (Dkt. No. 196 at 2–3); (Dkt. No. 196-1). In *Roberts*, the court found that the three factors—factual and employment settings, individualized defenses, and fairness and procedural considerations—all favored decertifying the

---

[5]   *Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-00092 Dkt. No. 50 (E.D. Tex. Aug. 6, 2021) (unpublished).

collective.  *Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-00092 Dkt No. 50, at 8–10 (E.D. Tex. Aug. 6, 2021) (unpublished).  Defendants rely heavily on the *Roberts* court's analysis for the first factor, to support their position that Plaintiffs may not use "ethical obligations" as the common policy, plan, or practice which requires Plaintiffs to work during meal breaks or off-the-clock.  (Dkt. No. 196 at 2–3).

While the facts in *Roberts* are somewhat similar to the present case, this Court finds that certain key facts upon which the factual and employment setting analysis turns are distinguishable from this case.  First, the collective members definition in *Roberts* is much broader than in this case.  *Roberts,* No. 1:20-CV-00092 Dkt. No. 50, at 9–10.  In fact, after the *Roberts* court granted the motion to decertify, Plaintiffs significantly narrowed the class—to include only nurses, as is the case here—and filed a motion asking the court to reconsider the ruling on the collective treatment.  *Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-00092, 2022 WL 4089819 (E.D. Tex. Aug. 9, 2022), *report and recommendation adopted*, 2022 WL 4084420 (E.D. Tex. Sept. 4, 2022).  The *Roberts* court found that the newly narrowed class, in combination with recent development in case law[6] favored allowing the collective to proceed.  *Id*. at *4–7.  Second, Plaintiffs' reliance in this case on their ethical obligations as medical care providers is in a different context than was the case in *Roberts*.  The *Roberts* court found that ethical obligations could not be used as a basis for the common policy, plan, or practice when it was based on the "conclusory allegations"

---

[6]    *See Hamm v. Acadia Healthcare Co., Inc.*, No. 2:20-CV-01515, 2022 WL 2713532, at *5 (E.D. La. July 13, 2022) (certifying a proposed collective of patient care employees including nurses, nursing staff, nursing assistants, nurse aides, technicians, clerks, nonexempt therapists, and other non-exempt employees similarly situated).

of the Plaintiffs.  Here, Plaintiffs point to more than conclusory allegations.  (Dkt. No. 193 at 9 nn.6–9).  Third, the *Roberts* plaintiffs did not allege that they had to carry electronic communication devices which led to the interruptions of their meal breaks, as the Plaintiffs allege in this case.  (*Id.* at 19–20).

The Court recognizes that Defendants have identified differences in the collective members and dispute whether certain members have sufficiently shown an injury.  But the Court holds that those differences do not warrant decertifying the class.

### B.   INDIVIDUALIZED DEFENSES

"The second decertification factor considers the various defenses available to defendants that appear to be individual to each plaintiff."  *Nguyen v. Versacom, LLC*, No. 3:13-CV-04689, 2016 WL 6650860, at *5 (N.D. Tex. Nov. 9, 2016).  A district court must determine whether the available defenses "pertain to the opt-in class as a whole or whether many different defenses will be raised with respect to each individual plaintiff." *Id.* (quoting *Reyes v. Tex. Ezpawn, L.P.*, No. 6:03-CV-00128, 2007 WL 101808, at *5 (S.D. Tex. Jan. 8, 2007)).  If the district court finds that defenses are individualized, it retains discretion to decertify if "the potential defenses would make the class unmanageable." *Nguyen,* 2016 WL 6650860, at *5.

Defendants argue that their defenses are highly individualized.  (Dkt. No. 189 at 22).  Specifically, Defendants raise two defenses: (1) the application of the limitation

period for each Plaintiff;[7] and (2) whether any claims are de minimis.  (*Id.* at 23–25).

Plaintiffs argue that both defenses raised by Defendants can be resolved collectively with

representative evidence and common proof because these defenses apply to all Plaintiffs

as a whole.  (Dkt. No. 193 at 27–30).

The Court finds that litigating these defenses would not render this collective

action unmanageable.  Defendants have only raised two defenses, both of which are

standard defenses that apply to all the Plaintiffs equally.  The defenses raised are not

different for each Plaintiff, and as Plaintiffs point out, representative evidence and

common proof can be used to make the determinations as to the limitation period and de

minimis claims.  The Court holds that the second factor favors denying the Motion for

Decertification.

### C.   FAIRNESS AND PROCEDURAL CONSIDERATIONS

In evaluating the third factor, fairness and procedural considerations, courts

"must consider the primary objectives of a collective action: (1) to lower costs to the

plaintiffs through the pooling of resources; and (2) to limit the controversy to one

proceeding which efficiently resolves common issues of law and fact that arose from the

same alleged activity."  *Mahoney v. Farmers Ins. Exch.,* No. 4:09-CV-02327, 2011 WL

4458513, at *10 (S.D. Tex. Sept. 23, 2011) (citing *Johnson v. TGF Precision Haircutters, Inc.,*

---

[7]     Here, Defendants argue that Plaintiffs filed their consents on various dates, and
consequently the limitation period for each Plaintiff varies.  (Dkt. No. 189 at 23).   Further,
Defendants claim that determination of whether they acted willfully will complicate the
limitation period analysis.  (*Id.*).   Defendants specifically note that if a three-year limitation is
assumed, "at least 33 of the Plaintiffs' claims are time-barred," and for a two-year limitation
period, "at least another 54 Plaintiffs will be barred from recovery."  (*Id.*).

No. 4:03-CV-3641, 2005 WL 1994286, at *7 (S.D. Tex. Aug. 17, 2005) (internal quotation marks omitted)).   At the same time, a court "must also determine whether it can coherently manage the class in a manner that will not prejudice any party." *Mahoney*, 2011 WL 4458513, at *10 (quoting *Johnson*, 2005 WL 1994286, at *7 (internal quotation marks omitted)).

Defendants assert that Plaintiffs have not offered a "manageable trial plan to account for the myriad of individualized inquiries inherent in the case[.]" (Dkt. No. 189 at 26).   Defendants argue that, because the sampled Plaintiffs are not representative of one another, their testimony cannot be fairly extrapolated to the entire Plaintiff population. (*Id.*).

Plaintiffs argue that the lawsuit should proceed collectively because the Plaintiffs are so similarly situated that requiring the claims to be adjudicated in individual trials would be an inefficient use of judicial resources.  (Dkt. No. 193 at 31).  Plaintiffs further argue that since discovery is complete, decertification at this point would pose more potential unfairness to Plaintiffs than to Defendants.  (*Id.*).  Briefly, Plaintiffs mention that any trial manageability and fairness concerns can be addressed by creating subclasses. (*Id.*).

The Court finds that fairness and procedural considerations favor denying the Motion to Decertify.   As noted previously, the Plaintiffs have shown that they are sufficiently similarly situated, and as such, judicial economy favors litigating these claims in a collective.  The Court believes that any concerns regarding trial manageability can be addressed by creating subclasses and further narrowing the collective to remove any

claims that are not viable.  Further, as suggested by the Plaintiffs, this Court has the authority to bifurcate questions of liability and damages.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Decertify Plaintiffs' Conditionally Certified FLSA Collective Action.  (Dkt. No. 189).

It is SO ORDERED.

Signed on February 24, 2023.

DREW B. TIPTON
**UNITED STATES DISTRICT JUDGE**